KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER            Bar No. 066401
NANCY BARRON               Bar No. 099278
AMY TAY                    Bar No. 252600
445 Bush St., 6th Floor
San Francisco, CA  94108
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901

TRUEBLOOD LAW FIRM
ALEXANDER B. TRUEBLOOD     Bar No. 150897
10940 Wilshire Blvd., Ste. 1600
Los Angeles, CA  90024
Telephone:  (310) 443-4139
Facsimile:  (310) 943-2255

Attorneys for Plaintiff Robert Baker and the potential class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT BAKER, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>GEMB LENDING INC.; THOR CC, INC; THOR CREDIT CORPORATION; E*TRADE FINANCIAL CORPORATION WHICH WILL DO BUSINESS IN CALIFORNIA AS E-TRADE FINANCIAL CORPORATION; CCB CREDIT SERVICES, INC.; and DOES 1 through 50, inclusive,<br><br>    Defendants.<br>_____/ | **Case No. C10-05261 (SBA)**<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS**<br><br>**Date:  May 15, 2012**<br>**Time:  10:00 a.m.**<br>**Courtroom 1 – 4th Floor**<br>**Hon. Saundra Brown Armstrong** |

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION** — 1

**MEMORANDUM OF POINTS AND AUTHORITIES** — 1

**I.   INTRODUCTION** — 1

**II.   SUMMARY OF PERTINENT ALLEGATIONS** — 3

A.   PURCHASE AND REPOSSESSION OF  THE BAKER VEHICLE — 3

B.   THE DEFENDANTS' CLASS DATA — 4

C.   THE FORM NOTICES OF REPOSSESSION AND RIGHT TO REDEEM — 5

    1.   Violation of Civil Code §2983.2(a)(1), Regarding the Consumer's Right to Redeem the Vehicle. — 5

    2.   Violation of Civil Code §2983.2(a)(2), Regarding the Consumer's Right to Reinstate the Contract. — 6

    3.   Violations of Civil Code §2983.2(a)(1)-(2), and (a)(5), Government Code §26751, and Vehicle Code §28 Pertaining to the Failure to Disclose the Government Repossession Fee Required for Redemption or Reinstatement. — 6

    4.   Violation of Civil Code §2983.2(a)(4), Regarding the Place at which the Motor Vehicle will be Returned. — 6

    5.   Violation of Civil Code §2983.2(a)(5), Regarding the Name and Address of the Person or Office to whom Payment shall be made. — 7

    6.   Violation of Civil Code §2983.2(a)(6), Regarding Disposition of the Motor Vehicle. — 7

    7.   Violation of Civil Code §2983.2(a)(7), Relating to the Failure to Provide the Proper Procedure for Requesting an Accounting. — 7

D.   DEFENDANTS MOUNTED A STRONG DEFENSE — 8

**III.   PERTINENT PROCEDURAL HISTORY** — 8

**IV.   SUMMARY OF SETTLEMENT TERMS** — 10

A.   THE SETTLEMENT CLASS IS CLEARLY DEFINED — 10

B.   CLASS RELIEF — 10

| | | |
|---|---|---|
| C. | INCENTIVE AWARD | 11 |
| D. | *CY PRES* | 11 |
| E. | ATTORNEYS' FEES | 11 |
| F. | COSTS OF NOTICE AND ADMINISTRATION | 12 |
| G. | RELEASE | 12 |
| H. | CLASS NOTICE | 12 |
| **V.** | **ESTABLISHED LAW SUPPORTS PRELIMINARY APPROVAL OF THIS SETTLEMENT** | 13 |
| A. | LEGAL STANDARDS | 13 |
| B. | THE COMMON LEGAL BASIS FOR THIS CLASS ACTION | 14 |
| C. | CONDITIONAL CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE | 17 |
| | 1.    Introduction | 17 |
| | 2.    Numerosity | 18 |
| | 3.    Typicality | 18 |
| | 4.    Adequacy | 18 |
| | 5.    Commonality | 19 |
| | 6.    Superiority | 20 |
| D. | THE TERMS OF THE PROPOSED SETTLEMENT ARE WITHIN ACCEPTABLE RANGE OF REASON AND FAIRNESS | 20 |
| E. | THE PROPOSED CLASS  SETTLEMENT  NOTICE IS CLEAR AND ADEQUATE | 21 |
| **VI.** | **PROPOSED SCHEDULE FOR REMAINING PROCEDURES** | 22 |
| **VII.** | **CONCLUSION** | 23 |

Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

12 U.S.C. §1461, *et seq.*     9

28 U.S.C. §1332(d)     8

28 U.S.C. §1446(a)     8

28 U.S.C. §1453(b)     8

Federal Rule of Civil Procedure 23(a)     17

Federal Rule of Civil Procedure 23(a)(1)     18

Federal Rule of Civil Procedure 23(a)(2)     19

Federal Rule of Civil Procedure 23(a)(3)     18

Federal Rule of Civil Procedure 23(a)(4)     19

Federal Rule of Civil Procedure 23(b)(3)     13,20

Federal Rule of Civil Procedure 23(b)(3)     1,3,23

Federal Rule of Civil Procedure 23(c)(2)(B)     21

Federal Rule of Civil Procedure 23(e)     1

## FEDERAL CASES

*Gay v. Waiters' & Dairy Lunchmen's Union* (N.D. Cal. 1980) 489 F.Supp. 282, *aff'd* (9th Cir. 1982) 694 F.2d 531     18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)     17,18,19,20

*In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988 (9th Cir. 2010)     12

*In re Traffic Exec. Ass'n,* 627 F.2d 631 (2d Cir. 1980)     13

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976)     13

*Wehner v. Syntex Corp.,* 117 F.R.D. 641, 644 (N.D. Cal. 1987)     18

## CALIFORNIA STATUTES

Business & Professions Code §17200, *et seq.*     9

iii

Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

Civil Code §2981 *et seq.*                                         4,9,14

Civil Code §2983.2                                                    16

Civil Code §2983.2(a)                                          2,5,18,19

Civil Code §§2983.2(a)(1)-(a)(9)                                   4,15

Civil Code §2983.2(a)(1)                                            5,6

Civil Code §2983.2(a)(2)                                              6

Civil Code §2983.2(a)(4)                                              6

Civil Code §2983.2(a)(5)                                            6,7

Civil Code §2983.2(a)(6)                                              7

Civil Code §2983.2(a)(7)                                            7,8

Civil Code §2983.8                                                   16

Government Code §26751                                                6

Vehicle Code §28                                                     6

## CALIFORNIA CASES

*Bank of America v. Lallana* (1998) 19 Cal.4[th] 203               15,16

*Bratta v Caruso* (1958) 166 Cal.App.2d 661                         14

*Carter v. Seaboard Finance Company* (1949) 33 Cal.2d 564           14

*Cerra v. Blackstone* (1985) 172 Cal.App.3d 604                     15

*Hernandez v. Atlantic Finance Co* (1980) 105 Cal.App.3d 65       14,15

*Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889    6,15,16

*Kuller v. Footlocker Retail, Inc.* (2008) 168 Cal App. 4th 116     21

*McGhee v. Bank of America* (1976) 60 Cal.App.3d 442                19

## OTHER AUTHORITIES

4 *Newberg on Class Actions* (4th ed. 2002) §11.22, *et seq.*    13,17

Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

4 *Newberg on Class Actions* (4th ed. 2002) §11.25                    13,14

4 *Newberg on Class Actions* (4th ed. 2002) §11.41                    13

*Final Report of the Assembly Interim Committee on Finance and Insurance*, at p. 7,    15
1 Appendix to Journal of the Assembly (1961 Reg.Sess.)

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*")    13,14,17
§30.41

NACA Class Guidelines, Guideline 11. *See,* 255 F.R.D. 215                    22

v

Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 15, 2012 at 10:00 a.m. in Courtroom 1, 4th Floor, in the U.S. District Court for the Northern District of California, Oakland, Plaintiff Robert Baker, on behalf of himself and the proposed Settlement Class he represents, will and hereby does move, pursuant to Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure, for an order of Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class.  This motion will be based on this Notice and Motion, the following Memorandum of Points and Authorities, the Declarations of Thomas Patton, Ron Krech, Olin McClain, and Nancy Barron filed herewith, along with any exhibits thereto, including the Settlement Agreement, Class Notice, and proposed orders.

Plaintiff seeks certification of the Settlement Class, Preliminary Approval of the Settlement Agreement and Class Notice, an order establishing the schedule for procedures including the final approval hearing and implementation of the terms of the Settlement Agreement.  Capitalized terms used in this Motion shall have the meanings and/or definitions given to them in the Settlement Agreement, as submitted to the Court herewith, unless otherwise defined herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I
## INTRODUCTION

This class action, brought by Robert Baker on behalf of himself and other similarly situated consumers, challenges the adequacy of statutory notices that Defendants GEMB Lending Inc. ("GEMB") and/or Thor Credit Corporation sent to California borrowers in

1

connection with the repossession of their motor vehicles.[1]  Plaintiff contends that Defendants' standard form Notice of Repossession and Right to Redeem (hereafter "Notice") failed to comply with the Rees-Levering Sales Finance Act, Civil Code §2983.2(a).  The legal effect of a defective Notice is that the lender is barred from collecting all deficiencies owed after post-repossession sale.  In this case the total deficiency amount for the Settlement Class is nearly $45 million ($44,705,357.00).  Defendants, and each of them, strongly deny the allegations.

Despite continuing disagreement on the merits of the case, the parties have agreed to settle, with specific and substantial benefits to an identifiable class.  Defined in ¶2.30 of the Settlement Agreement, the "Settlement Class" consists of all California citizens:

a)      who entered into a Conditional Sale Contract in California for the purchase of a Motor Vehicle;

b)      whose Motor Vehicle was repossessed or voluntarily surrendered;

c)      who were issued a written post repossession notice by GEMB and/or Thor at any time from four years preceding the filing of this Action (October 12, 2006) through February 1, 2012;

d)      whose Conditional Sale Contract was owned by GEMB, Thor and/or E*Trade at the time the notice was sent; and

e)      who were assessed a Deficiency Balance following the disposition of the Motor Vehicle.

Excluded from the Settlement Class are:

a)      persons from whom GEMB, E*Trade and/or CCB obtained judgments prior to filing of the complaint on October 12, 2010; and/or

b)      persons who made a payment on or toward their deficiency balance after the written post repossession notice was sent and who also filed for bankruptcy.

This clear and concise description of the Settlement Class appears in the proposed Class Notice

---

[1] GEMB Lending, Inc. ("GEMB"), E*Trade Financial Corporation ("E*Trade") and CCB Credit Services, Inc. (hereafter referred to collectively as "Defendants") are parties to this Settlement Agreement.  Thor Credit Corporation, Inc. no longer exists and neither Thor entity could be served.  They will be dismissed without prejudice.  Counsel for GEMB has represented that data relevant to Thor Credit Corporation has been included in the information provided by GEMB.

2

as well.

As more fully discussed below, the proposed settlement satisfies all of the criteria for preliminary approval.  Moreover, the proposed Settlement Class is appropriate for conditional certification under Federal Rules of Civil Procedure, Rule 23(b)(3).  Accordingly, Plaintiff moves the Court to conditionally certify the proposed Settlement Class, grant preliminary approval of the Settlement Agreement, direct service of the Class Notice, and schedule a final approval hearing.

## II
## SUMMARY OF PERTINENT ALLEGATIONS

Thor Credit Corporation was in the business of accepting assignment of conditional sale contracts from motor vehicle dealers in California.  Defendants GEMB and certain E*Trade entities subsequently accepted assignment of conditional sale contracts from Thor.  Declarations of Thomas Patton (on behalf of GEMB) and Olin McClain (on behalf of E*Trade), filed herewith.  CCB Credit was a debt collector servicing such loan accounts on behalf of E*Trade during the Class Period.  Declaration of Ron Krech (on behalf of CCB Credit), filed herewith.  In the four years preceding the filing of this Action, Defendants or their agents repossessed the vehicles of Plaintiff and Settlement Class members due to their alleged failure to make payments due on their loans.  GEMB and/or Thor then sent each of them a standard form Notice or Repossession and Right to Redeem ("Notice") identical or materially similar to the one sent to Plaintiff, sold the vehicles, and Defendants then demanded, collected, or attempted to collect the difference between the sales price and the balance of the loan (i.e., the "Deficiency Balance).  An example of the Notice forms used by Defendants in California is attached to the First Amended Complaint on file in this action.

### A.    PURCHASE AND REPOSSESSION OF  THE BAKER VEHICLE

Plaintiff Robert Baker purchased a Winnebago Ultimate Freedom motor home on July

3

21, 2003 from La Mesa R.V., a dealership in Davis, California. The dealership arranged financing for the purchase under a conditional sale contract which Plaintiff asserts was governed by the Rees-Levering Act. Civ. Code §2981 *et seq.* Thor accepted assignment of Baker's contract and became the lien holder on the California Certificate of Title. Thor then sold Baker's account, and the accounts of other Settlement Class members, to either E*Trade or GEMB. GEMB serviced and collected on the accounts both for itself and on behalf of E*Trade. CCB provided collection services on some of the accounts owned by E*Trade. The Thor entities are now out of business.

In 2010, GEMB repossessed Baker's motor home and issued him a written document titled "Notice of Repossession and Right to Redeem" ("Notice"). This standard form Notice did not contain several of the disclosures mandated by Civil Code §§2983.2(a)(1)-(a)(9). Plaintiff did not reinstate, and his vehicle was sold at auction. Thereafter, Baker received a letter from GEMB dated September 7, 2010, notifying him that E*Trade had purchased the account, and that the account would now be serviced by defendant CCB. He was then assessed a deficiency balance of $62,667.78. He paid some amount toward this deficiency, but not all. GE Money/Lending, Inc. furnished a negative trade line against his credit report.

**B.      THE DEFENDANTS' CLASS DATA**

Plaintiff and Settlement Class members are similarly situated, but the Defendants played different, overlapping roles in the financing and debt collection of the subject accounts. Their respective roles are explained in the Declarations of Olin McClain, Ron Krech and Thomas Patton, all filed herewith, and briefly summarized as follows. The Defendants agree that the Settlement Class definition provides criteria by which 2,304 accounts have been clearly ascertained. *Ibid.* Of this total, GEMB owned 1,689 class member accounts and E*Trade owned 615 class member accounts (McClain Decl., ¶7). CCB owned no such accounts, but serviced

4

some of the E*Trade owned accounts (Krech Decl., ¶¶4, 8[*sic*]).  E*Trade has collected a total of

$394,095.81 in deficiencies from Settlement Class Members ($247,145.81 through collection

efforts of CCB) and GEMB ($146,950 collected by GEMB) on its accounts (McClain Decl.,

¶7(c)).  GEMB separately collected a total of $246,602 on accounts it serviced for itself (Patton

Decl., ¶8(d)).

 The total amount of outstanding deficiencies for class member accounts is

$44,705,357.00 (Patton Decl., ¶8(f) and McClain Decl., ¶7(d)).  The total amount that all

Defendants or their agents collected from Settlement Class Member accounts is $640,697.81

(McClain Decl., ¶7(c) and Patton Decl., ¶8(d)).  Defendants have agreed to return 64% of the

amount they collected from Settlement Class Members, or $410,046.59.

**C.** **THE FORM NOTICES OF REPOSSESSION AND RIGHT TO REDEEM**

 Plaintiff Robert Baker alleges that the form Notice, which GEMB and/or Thor issued to

him following the repossession or voluntary surrender of his Ultimate Freedom motor home –

which is a form document sent to Plaintiff and other consumers in California – failed to comply

with the Rees-Levering Act, California Civil Code §2983.2(a) in several respects, including (*See*

First Amended Complaint, ¶¶30, 62):

 **1.** **Violation of Civil Code §2983.2(a)(1), Regarding the Consumer's Right to Redeem the Vehicle.**

 Borrowers owe deficiency balances pursuant to a Rees-Levering contract only if the

Notice "[s]ets forth that those persons shall have a right to redeem the motor vehicle by paying in

full the indebtedness evidenced by the contract until the expiration of 15 days from the date of

giving or mailing the notice and provides an itemization of the contract balance and of any

delinquency, collection or repossession costs and fees and sets forth the computation or estimate

of the amount of any credit for unearned finance charges or canceled insurance as of the date of

the notice."

The subject Notice fails to comply with these requirements.  Among other things, the borrower must not be required to make further inquiries.

### 2. Violation of Civil Code §2983.2(a)(2), Regarding the Consumer's Right to Reinstate the Contract.

Borrowers owe deficiency balances pursuant to a Rees-Levering contract only if the Notice "[s]tates either that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice and all the conditions precedent thereto or that there is no right of reinstatement and provides a statement or reasons therefore." The subject Notice fails to comply with this requirement, because it requires the consumer to make further inquiry as opposed to setting forth the exact amount needed to reinstate on any particular day.

### 3. Violations of Civil Code §2983.2(a)(1)-(2), and (a)(5), Government Code §26751, and Vehicle Code §28 Pertaining to the Failure to Disclose the Government Repossession Fee Required for Redemption or Reinstatement.

Government Code §26751 and Vehicle Code §28 require the consumer to pay a fee of $15 to the law enforcement agency where the reported repossession was filed before the vehicle can be released.  The GEMB notice fails to provide the name and address of the agency, and fails to provide the dollar amount to be paid, making it impossible for the consumer to reinstate the contract or redeem the vehicle without the need for further inquiry.  This fee is a necessary "condition precedent" to both reinstatement and redemption. *See, Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889.

### 4. Violation of Civil Code §2983.2(a)(4), Regarding the Place at which the Motor Vehicle will be Returned.

Borrowers owe deficiency balances pursuant to a Rees-Levering contract only if the Notice "[d]iscloses the place at which the motor vehicle will be returned to those persons upon redemption or reinstatement."  The subject Notice fails to provide this information.

6

5.      **Violation of Civil Code §2983.2(a)(5), Regarding the Name and Address of the Person or Office to whom Payment shall be made.**

Borrowers owe deficiency balances pursuant to a Rees-Levering contract only if the Notice "[d]esignates the name and address of the person or office to whom payment shall be made." From the face of the Notice, the consumer is unable to determine without further inquiry where payment shall be made.

6.      **Violation of Civil Code §2983.2(a)(6), Regarding Disposition of the Motor Vehicle.**

Borrowers owe deficiency balances pursuant to a Rees-Levering contract only if the Notice:

> States the seller's or holder's intent to dispose of the motor vehicle upon the expiration of 15 days from the date of giving or mail the notice . . . and further, that upon written request to extend the redemption period and any applicable reinstatement period for 10 days, the seller or holder shall without further notice extend the period accordingly.

The subject Notice fails to inform a consumer that the sale date will be extended automatically upon written request to extend the reinstatement period.

7.      **Violation of Civil Code §2983.2(a)(7), Relating to the Failure to Provide the Proper Procedure for Requesting an Accounting.**

Borrowers owe deficiency balances pursuant to a Rees-Levering contract only if the Notice "[i]nforms those persons that upon written request, the seller or holder will furnish a written accounting regarding the disposition of the motor vehicle as provided for in the subdivision (b)." According to subdivision (b), "Unless, automatically provided to the buyer within 45 days after the disposition of the motor vehicle, the seller or holder shall provide to any person liable on the contract within 45 days after their written request, *if the request is made within one year after the disposition*, a written accounting regarding the disposition." (emphasis added)

The subject Notice fails to inform the consumer that the written request must be made

7

within one year after the disposition.  Accordingly it fails to inform the consumer that GEMB will furnish a written accounting as provided for in subdivision (b) and therefore violates Civil Code §2983.2(a)(7).

Given insufficient information to know exactly what he was supposed to do, Plaintiff did not exercise his right to reinstate or redeem the contract and recover his vehicle.  Defendants sold the vehicle and assessed deficiency balances against him.  Documents and information exchanged among the parties reveal that substantially similar Notice forms were distributed to the proposed Settlement Class.

**D.**    **DEFENDANTS MOUNTED A STRONG DEFENSE**

Against the strength of the Plaintiff's case under California law, the Defendants mounted a vigorous defense.  They filed motions for summary judgment and motions to dismiss.  Among other things, Defendants raised the possibility that they were immune from liability under California law under principles of preemption.  These contentions were never fully litigated as certain motion practice was stayed by stipulation of the parties pending these settlement negotiations.  During this time, various other state and federal courts of review were deciding similar issues, and the parties differed on which law to apply.  In addition, E*Trade filed a motion contending that Plaintiff had sued the wrong E*Trade entity.  That contention was addressed and resolved in the settlement process for the benefit of the class.

**III**
**PERTINENT PROCEDURAL HISTORY**

Plaintiff originally filed this action in the Superior Court of the City and County of San Francisco on October 12, 2010.  E*Trade removed this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§1332(d), 1446(a) and 1453(b), based on the Class Action Fairness Act ("CAFA").  Largely to clarify the identity of the corporate parties, Plaintiff filed the First Amended Complaint ("FAC") on November 30, 2011.

8

Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

In that, the operative pleading, Plaintiff seeks relief on behalf of himself and others similarly situated for Defendants' violations of California's Rees-Levering Act, Cal. Civ. Code §2981, *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* All Defendants have been served with the FAC, except for the Thor entities, which do not appear to exist as corporate entities anymore.

Prior to the filing of the FAC, E*Trade and CCB each filed a motion to dismiss, primarily on the grounds that the Federal Home Owner's Loan Act, 12 U.S.C 1461, *et seq.* ("HOLA") preempts all of Plaintiff's claims. On March 15, 2011, E*Trade also filed a motion for summary judgment on the grounds that E*Trade has had no involvement with Plaintiff's contract, despite that E*Trade appears on documents that Plaintiff filed with the Court. After the Court entered a stay pursuant to the parties' stipulation these motions have been dismissed without prejudice to re-file. Neither E*Trade nor CCB has re-filed its motion. After the parties had engaged in formal or informal exchange of documents, the Court offered the services of the Honorable Laurel Beeler, Magistrate Judge, to be held in a series of settlement conferences, commencing January 20, 2012. All parties exchanged settlement conference statements, appeared and argued positions, in open and closed sessions. The case was vigorously contested and all counsel zealously represented their respective parties and positions, exploring the facts and evidence, state of the law, and possible outcomes in terms of class certification and ultimate merits determinations in considerable detail. Several settlement conference sessions followed, and over the course of two months, counsel for the parties, again with the assistance of Judge Beeler, came to agreement and compromise. The parties now return to this Court, seeking approval of an agreement which recognizes the risks, but also gives a substantial class of more than 2,300 California borrowers significant benefits, including nearly $45 million of debt collection relief.

//

## IV
## SUMMARY OF SETTLEMENT TERMS

**A.**   **THE SETTLEMENT CLASS IS CLEARLY DEFINED**

The "Settlement Class" (Settlement Agreement ¶2.30)[2] consists of all California citizens:

a)   who entered into a Conditional Sale Contract in California for the purchase of a Motor Vehicle;

b)   whose Motor Vehicle was repossessed or voluntarily surrendered;

c)   who were issued a written post repossession notice by GEMB and/or Thor at any time from four years preceding the filing of this Action (October 12, 2006) through February 1, 2012;

d)   whose Conditional Sale Contract was owned by GEMB, Thor and/or E*Trade at the time the notice was sent; and

e)   who were assessed a Deficiency Balance following the disposition of the Motor Vehicle.

Excluded from the Settlement Class are:

a)   persons from whom GEMB, E*Trade and/or CCB obtained judgments prior to filing of the complaint on October 12, 2010; and/or

b)   persons who made a payment on or toward their deficiency balance after the written post repossession notice was sent and who also filed for bankruptcy.

**B.**   **CLASS RELIEF**

Each Participating Settlement Class Member will receive actual, concrete and immediate benefits of the settlement.  The Settlement Class Members fall into two distinct categories depending on the status of their accounts.  According to the records of Defendants, and subject to verification and compliance procedures, there are approximately 2,304 Settlement Class members, whose aggregate deficiency balances total approximately $44,705,357.00 (¶5.01; Declarations of McClain and Patton).  Defendants will permanently waive and extinguish the

---

[2] Numbered paragraph references (i.e., ¶) are to the Settlement Agreement, attached to the Barron Decl., unless otherwise noted.

deficiency balance of each Participating Class Member.

Of this amount, Defendants have recovered a relatively small amount by way of their collection activity. Those Participating Settlement Class Members who paid some amount toward their deficiency will get a refund of 64% of what they paid (¶5.02(c)). Defendants shall take specified steps to notify the three major credit reporting agencies (Experian, Trans Union and Equifax) to instruct the agencies to delete any negative trade line concerning the deficiency charges, and if notified that a credit reporting agency has failed to do so will make one additional request (¶5.03(d)-(f)).

C.    **INCENTIVE AWARD**

In addition to the relief he is otherwise entitled to as a Settlement Class Member, Plaintiff, as class representative, is to receive an incentive award of $10,000, for his service to the class, subject to the approval of this Court (¶5.06).

D.    ***CY PRES***

Rather than reversion of funds remaining from uncashed distribution funds, the Settlement Agreement provides for a *cy pres* award to two non-profit organizations: Bay Area Legal Aid Society and the Inner City Law Center (¶5.07). Additional supporting materials in favor of these nominees will be provided to the Court at the time of the final hearing, and the recipients are subject to the approval of this Court.

E.    **ATTORNEYS' FEES**

The Settlement Agreement provides that Defendants will pay Class Counsel reasonable attorneys' fees, costs and expenses of $435,000 subject to approval by the court. This is separate from, and additional to, the relief to be granted to the Settlement Class (¶5.08). Plaintiff will submit points and authorities, along with supporting declarations with a motion in support of the reasonableness of the agreed upon fees and costs prior to the deadline for objections (¶4.01).

The fees were negotiated apart from the relief to the class and in no way diminish or affect class-wide benefits.  Class Counsel will file their motion for attorneys' fees prior to the deadline for Settlement Class Members to object or opt out.  *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988 (9th Cir. 2010). *See,* Declaration of Nancy Barron, filed herewith.

**F.      COSTS OF NOTICE AND ADMINISTRATION**

Defendants shall pay all fees, costs, and expenses concerning sending of the Class Notice and costs related to providing the agreed upon relief to Participating Settlement Class Members (¶5.05).

**G.      RELEASE**

Subject to the Court's retaining jurisdiction to enforce the terms of the Settlement Agreement, upon final approval, Participating Settlement Class Members will release claims against Defendants and dismiss the Action with prejudice as a part of the final resolution of this matter (¶5.09).

**H.      CLASS NOTICE**

The proposed Class Notice is clear and concise, and provides the opportunity for Settlement Class members to opt out or to exclude themselves for 60 days after the notice is mailed and before the final approval hearing (¶3.10-3.14).

All of the settlement terms are subject to the approval of this Court.  In the event the Settlement Agreement is not approved, the entire compromise shall be null and void, and the parties will proceed with the litigation (¶3.15).  Nonetheless, the settlement provides substantial and significant benefits to the Settlement Class, is fair and reasonable, and should be given conditional approval, so that the matter can proceed to Class Notice and ultimately to distribution.

//

V

**ESTABLISHED LAW SUPPORTS PRELIMINARY APPROVAL OF THIS SETTLEMENT**

A.   **LEGAL STANDARDS**

The law favors settlement, particularly in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See,* 4 *Newberg on Class Actions* (4th ed. 2002) §11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).   Judicial proceedings under Federal Rules of Civil Procedure, Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements.  The *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") §30.41, describes three distinct steps:

(1)   Preliminary approval of the proposed settlement at an informal hearing;

(2)   Dissemination of mailed and/or published notice of the settlement to all affected Class members; and

(3)   A "formal fairness hearing," or final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual*, §30.41.  This procedure, commonly used by federal courts and endorsed by class action commentator, Herbert Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *Newberg* §11.22, *et seq.*

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions, and the scheduling of a formal fairness hearing, are worthwhile.  4 *Newberg* §11.25.  To grant preliminary approval of this class action settlement, the Court need find only that the settlement falls within the range of possible final approval, also described as "the range of reasonableness."  *In re Traffic Exec. Ass'n,* 627 F.2d

13

631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg* §11.25.

The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial assessment" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settling parties. *See,* Declarations of Nancy Barron, Thomas Patton, Olin McClain and Ron Krech, and exhibits thereto, filed in support of this motion. These materials amply satisfy the criteria set forth in the *Manual*, to wit:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual*, §30.41; *see also* 4 *Newberg*, §11.25. As shown below, the proposed settlement falls well within the range of reasonableness described by the commentators. In fact, the Participating Settlement Class members receive debt relief and a fair portion of restitution, without facing the considerable risks and delay of trial in this matter.

**B.     THE COMMON LEGAL BASIS FOR THIS CLASS ACTION**

This lawsuit arises out of the mandatory notice and anti-deficiency provisions of the Rees-Levering Act, Civil Code §2981, *et seq.*, which provide statutory protection for consumers buying vehicles on credit. That statute has, for nearly fifty years, represented California's strong interest in consumer protection. Effective 1962, the Rees-Levering Act replaced the 1945 Automobile Sales Act, "and was designed to provide a more comprehensive protection for the unsophisticated motor vehicle consumer." *Hernandez v. Atlantic Finance Co* (1980) 105 Cal.App.3d 65, 69-70. Previously, courts had struggled to hold the formal requisites of the predecessor statute to be mandatory (e.g., *Carter v. Seaboard Finance Company* (1949) 33 Cal.2d 564, 573; *Bratta v Caruso* (1958) 166 Cal.App.2d 661, 664), but the Rees-Levering Act was enacted to eliminate any doubt about the legislature's broad consumer protection intent.

*Cerra v. Blackstone* (1985) 172 Cal.App.3d 604, 607-609.  The statute has been amended numerous times, but always increasing the protections to California consumers.

The public policy underlying the Rees-Levering Act recognizes the importance of vehicles to individual consumers.  "The sale of automobiles is particularly important because of the very size, for the great majority of families, of the economic decision involved in the purchase of an automobile.  Such a purchase is second in importance to a family only to the purchase of a home."  *Final Report of the Assembly Interim Committee on Finance and Insurance*, at p. 7, 1 Appendix to Journal of the Assembly (1961 Reg.Sess.)

Thus to promote these important public policies, courts do not hesitate to strictly enforce the statutory requirements of the Rees-Levering Act.  The extensive formalities and requirements prescribed by the statute are mandatory, and a notice that does not conform to the requirements is unenforceable.  *Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69-70.  "[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law.  If he does not obey the law, he may not have his deficiency judgment.'" *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215 (internal citation omitted).

In order to protect consumers' valuable property interests in financed vehicles, the Rees-Levering Act, Civil Code §2983.2(a)(1) through (9), details the information creditors must provide to buyers in the Notice.  It is a strict liability statute.  The disclosures are intended to afford buyers a full opportunity to make an informed decision as to whether to exercise their statutory right to reinstate the contract by bringing the loan current, or to redeem the contract by paying off the full balance due.  Either way, the consumer is entitled to precise information as to the amount to be paid, the exact place and manner in which it must be paid, and the date by which such payment must be made in order to obtain return of the vehicle.  *Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889.

15

If any one of the mandated disclosures is missing, or does not strictly comply with the law, the lender is absolutely barred from collecting from the borrower any deficiency remaining after disposition of the vehicle.  Civil Code §§2983.2, 2983.8; *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215.  Substantial compliance is not sufficient.  Either the notice conforms with all of the requirements of the statute, or it is legally defective.  *Id.*

The signature case, *Juarez v. Arcadia Financial, supra,* was a class action challenging violations of the Rees-Levering Act similar to those here.  The notice provided partial information, but the borrower would have to call the lender to find out what exact amount to pay – and to whom – to reinstate the contract.  The court held that Arcadia's recitation of the general conditions for reinstatement did not apprise the consumer of "all conditions precedent" to getting their car back.  In requiring creditors to state "all conditions precedent" to reinstatement, the legislature meant not only amounts to be paid to third parties and payments currently due, but also:

> The Notice must also inform the consumer if, when and by how much those amounts may increase as a result of additional payments coming due, or as a result of late fees or other fees and charges.  In other words, creditors must provide consumers with sufficient information to allow consumers to fulfill all of the conditions the consumer must meet before a creditor will reinstate the contract.

*Id.*, p. 912.  Partial information is not enough.  "The creditor must provide the buyer with *all* of the relevant information it possesses and/or information it has the ability to discern, concerning precisely what the buyer must do to reinstate his or her contract." *Id.*, p. 909.

In the instant case, Plaintiffs allege that Defendants' standard form Notice was defective and Defendants are thus denied any right to a deficiency from any Settlement Class member. The Notices that are the subject of this action, were standard forms one of which and which the named Plaintiff received.

//

## C.   CONDITIONAL CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE

### 1.   Introduction

Plaintiffs request that the Court conditionally certify the proposed Settlement Class, defined in accordance with the Settlement Agreement (¶2.30).

Conditional class certification is appropriate at the preliminary approval stage where, as here, the proposed Settlement Class as it is defined in the parties' Settlement Agreement has not previously been certified by the Court and the requirements for certification are met. 4 *Newberg* §11.22. The purpose of conditional class certification is to facilitate distribution to all class members of notice of the terms of the proposed settlement and the date and time of the final approval hearing. *See Manual* §30.41. Neither formal notice nor a hearing is required for the Court to grant conditional class certification. Instead, the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Manual* §30.41.

The Federal Rules of Civil Procedure have established several requirements for obtaining class certification:  numerosity, typicality of the class representatives' claims, adequacy of representation, predominance of common issues, and superiority. Fed. Rules of Civ. P., Rule 23(a); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). This proposed Settlement Class meets all of the requirements of certification for settlement purposes. The primary elements required for class certification are the subject of stipulation set forth in the Settlement Agreement itself, were verified through diligent informal discovery and investigation, and are subject to verification and compliance procedures.

//

//

//

### 2.    Numerosity

With more than 2,304 members[3] of the class entitled to an elimination of aggregate debt of nearly $45,000,000, and an additional $410,047 in cash refunded to that portion of the 310 Class Members who paid toward their deficiencies, the class is sufficiently numerous that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union* (N.D. Cal. 1980) 489 F.Supp. 282, *aff'd* (9th Cir. 1982) 694 F.2d 531; Fed. R. Civ. P. 23(a)(1).

### 3.    Typicality

Similarly, the typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon, supra,* 150 F.3d at 1020.   The claims of the named representative in this case are typical of the claims of the whole class, because they arise from the same factual basis and are based on the same legal theory as those applicable to the Settlement Class members. *Wehner v. Syntex Corp.,* 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Factual differences may exist between the class representatives and the class members so long as the claims arise from the same events or course of conduct and are based on the same legal theories. *Hanlon, supra,* 150 F.3d at p. 1020; *Wehner, supra* 117 F.R.D. at p. 644.  The representative Plaintiff and the proposed Settlement Class members claim that Defendants engaged in unlawful practices by sending standard printed form Notices that violated the Rees-Leering Automobile Sales Finance Act, Civil Code §2983.2(a).  All Settlement Class members' claims thus arise from the same set of facts and same legal theories.  The typicality requirement, therefore, is also satisfied. Fed. R. Civ. P. 23(a)(3).

### 4.    Adequacy

The adequacy requirement is met if the named representative and his counsel have no

---

[3] There are 2,304 accounts that satisfy the class definition (¶2.30). *See,* Patton Decl. ¶8(a).  However, there may be multiple borrowers on each account (¶3.11, 5.02(d)).

interests adverse to those of the proposed Settlement Class Members and are committed to

vigorously prosecuting the case on behalf of the class. *Id.,* Rule 23(a)(4); *Hanlon, supra,* 150

F.3d at 1020; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450-51.  Those standards

are met here.  Plaintiff's interests in prosecuting the case and obtaining the most beneficial

recovery possible fully comport with the interests of the Settlement Class.  Finally, any

Settlement Class member who wishes to "opt out" of the settlement may do so (¶3.13).  There is,

therefore, no conflict of interest between the named representative and class members.  In

addition, throughout this litigation, Plaintiff and his counsel have demonstrated their

commitment to vigorously prosecuting the case on behalf of the class.  Plaintiff and the

Settlement Class are represented by experienced class counsel.  Declaration of Nancy Barron,

filed herewith.  The adequacy requirement is met.

**5.      Commonality**

The commonality requirement is met if common questions of law or fact predominate in

the litigation. *Hanlon, supra,* 150 F.3d at p. 1019.  The test is whether the proposed class is

sufficiently cohesive to warrant adjudication by representation. *Id.,* at p. 1022.

Here, the proposed Settlement Class members' claims flow from common issues:

whether or not Defendants' statutory Notices sent pursuant to Civil Code §2983.2(a) failed to

provide the disclosures required by the Rees-Levering Act, Civil Code §2983.2(a), whether as a

result, Defendants are barred from collecting deficiency balances from Robert Baker and each of

the other Settlement Class Members or whether the claims are preempted as a matter of law. This

common legal theory is more fully explained above.

Defendants do not dispute that they sent the same form Notice to hundreds of consumers,

including the Settlement Class members.  Under these circumstances, the commonality

requirement is satisfied. *Hanlon, supra,* 150 F.3d at 1019-20. Fed. R. Civ. P. 23(a)(2).  Indeed,

19

Defendants stipulate to the number of identifiable, commonly situated individuals in the executed Settlement Agreement itself (¶5.01).  Thus, the proposed Settlement Class in this case is sufficiently cohesive, because all members share a "common nucleus of facts and potential legal remedies."  Common questions about the legality of Defendants' repossession practices predominate over individual questions, and class certification is authorized under Fed. R. Civ. P. 23(b)(3).

### 6.      Superiority

Class resolution is superior to other available methods for the fair and efficient adjudication of the present controversy.  The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon, supra,* 150 F.3d at 1023.  Here, as in *Hanlon,* the alternative methods of resolution are individual claims for a relatively small amount of damages; these claims "would prove uneconomic for a potential plaintiff," because "litigation costs would dwarf potential recovery."  *Id.*  For this reason, in this case, as in *Hanlon,* a class action settlement is the preferred method of resolution.

### D.      THE TERMS OF THE PROPOSED SETTLEMENT ARE WITHIN ACCEPTABLE RANGE OF REASON AND FAIRNESS

The proposed settlement will give substantial benefits to the Settlement Class members.  It offers Settlement Class members all the debt relief and credit repair to which they would be entitled should they prevail in a trial of this matter.  It returns, in the form of restitution, sixty four percent (64%) of any cash amount paid toward the deficiency.  It compensates the named representative, recognizes the contribution of Class Counsel, and at the same time provides a fair scope of release of claims to the Defendants. There is no reason why the compromise should not be approved.

The parties negotiated the proposed Settlement Agreement in good faith and at arm's length.  The parties engaged in informal discovery for the purposes of settlement.  The informal

20

discovery was validated and verified by declarations of the most qualified corporate representative of each Defendant separately and the declarations corroborated each other.  As a result, Class Counsel had sufficient documents and information to assess the strengths and weaknesses of the claims and the benefits of the proposed settlement under the circumstances of this case.  Further to that end, Defendants provide the corporate declarations of Thomas Patton, Ron Krech and Olin McClain in support of this approval motion.  Declarations of Thomas Patton, Ron Krech and Olin McClain filed herewith.

The parties considered the possible range of outcomes, were this case to go to trial, and possibly appeals.  Based on the declarations filed herewith, the Court can "independently satisfy itself that the consideration being received for release of class members' claims is reasonable." *Kuller v. Footlocker Retail, Inc.* (2008) 168 Cal App. 4th 116, 129.  While all sides litigated the strengths and merits of their respective positions, no party was 100% certain to prevail.  Despite the strength of the evidence against them, the Defendants vociferously deny their liability and contend that, even if they were liable under California law, federal preemption absolves them of responsibility to the class under the facts alleged.  Were they to prevail on that theory, the class would get nothing.  On the far side of the spectrum, were Plaintiff to prevail, Defendants would have to pay back 100% of the money every class member paid toward the deficiency, with prejudgment interest.  This settlement is a fair balance of the risks on both sides.

E.     **THE PROPOSED CLASS SETTLEMENT NOTICE IS CLEAR AND ADEQUATE**

The parties propose a Class Notice in the form attached to the Settlement Agreement as Exhibit B.  It follows Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, which requires the notice to "concisely and clearly state in plain, easily understood language" all of the following:  the nature of the action, class definition, a general statement of the class claims and issues, that a class member may enter an appearance through counsel if desired, the right and

21

manner of exclusion or objection, and the binding effect of class judgment (release).  The notice prepared by counsel in this case is drafted in clear, concise, everyday language, with a minimum of legalese.  It provides a clear statement explaining how to tell whether a consumer is a class member, the total amount and nature of relief, how further information can be obtained, attorney compensation, nature of claims and defenses, proposed distribution and opt out procedures.  The Class Notice is drafted in a manner intended to conform to practice recommended by the NACA Class Guidelines, Guideline 11. *See,* 255 F.R.D. 215, Declaration of Nancy Barron, ¶¶8-9.

The parties propose that the Class Notice be distributed by first class mail, as the best notice practicable (¶3.10-3.12).

# VI
## PROPOSED SCHEDULE FOR REMAINING PROCEDURES

If this motion is granted, the parties request a final hearing, so that the Court can determine whether to enter a final order approving the terms of the Settlement Agreement as fair, reasonable and adequate.  The Settlement Agreement and Class Notice contemplate and afford an opportunity for Settlement Class members to opt-out of or object to the settlement, and at the same time provide for a final hearing to enable this Court to approve non-class benefits such as incentive award, legal fees, and *cy pres* provisions.

Based upon the Settlement Agreement, the parties suggest the following approximate timetable:

| | | |
|---|---|---|
| 1. | Preliminary Approval | May 15, 2012 |
| 2. | Class Notice to be mailed (30 days after preliminary approval) | June 14, 2012 |
| 3. | Deadline for Exclusion from the class, Objections to the Settlement (60 days after notice mailed) | August 13, 2012 |
| 4. | Motion for Final Approval | To be determined at Preliminary Approval |
| 5. | Final Approval Hearing | To be determined at Preliminary Approval |
| 6. | Class Distribution | To be determined at Final Approval |

22

At the final fairness and approval hearing, Class Counsel will request implementation of the settlement terms and provisions, a finding that the notice given to the class members satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, an award of attorneys' fees and costs, an incentive award to the Class Representative Robert Baker, designation of *cy pres* recipients to be awarded at the end of the distribution process, and an order that this Court retain jurisdiction to enforce the provisions of the Settlement Agreement should the need for further court involvement arise.

## VII
## CONCLUSION

WHEREFORE, the parties request that the Court conditionally certify the proposed Settlement Class pursuant to Rule 23(b)(3) of the  Federal Rules of Civil Procedure, grant preliminary approval of the proposed Class Settlement Agreement, approve and order distribution of the proposed Class Notice, and schedule a final approval hearing.

Dated:  April 4, 2012

KEMNITZER, BARRON & KRIEG, LLP

TRUEBLOOD LAW FIRM LLP


By:   *Nancy Barron*
NANCY BARRON
Attorneys for Plaintiffs and the Settlement Class

PROOF OF SERVICE

Re:     *Baker v. GEMB Lending, Inc., et al.*
        **USDC-ND California Case No. C10-05261 (SBA)**
        **San Francisco County Superior Court Case No. CGC10504533**

I, Sean R. Barry, certify that I am not a party to the proceeding herein, that I am and was

at the time of service over the age of 18 years old, and a resident of the State of California. My

business address is 445 Bush Street, San Francisco, California 94108.

On April 4, 2012, I served the following:

**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND CONDITIONAL
CERTIFICATION OF A SETTLEMENT CLASS**

**DECLARATION OF NANCY BARRON IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND
CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS**

**DECLARATION OF RON KRECH RE IN SUPPORT OF MOTION FOR AN ORDER
PRELIMINARILY CERTIFYING A SETTLEMENT CLASS AND PRELIMINARILY
APPROVING A SETTLEMENT SUBMITTED ON BEHALF OF CCB CREDIT
SERVICE, INC.**

**DECLARATION OF OLIN McCLAIN IN SUPPORT OF MOTION FOR AN ORDER
PRELIMINARILY CERTIFYING A SETTLEMENT CLASS AND PRELIMINARILY
APPROVING A SETTLEMENT SUBMITTED ON BEHALF OF E*TRADE
FINANCIAL CORP.**

**DECLARATION OF THOMAS PATTON IN SUPPORT OF MOTION FOR AN ORDER
PRELIMINARILY CERTIFYING A SETTLEMENT CLASS AND PRELIMINARILY
APPROVING A SETTLEMENT SUBMITTED ON BEHALF OF GEMB LENDING INC.**

//

//

//

//

//

//

(VIA ELECTRONIC CASE FILING)  I filed electronically the documents listed above, using the above-captioned Court's electronic case filing service.  Counsel of record are registered to file electronically with this Court, and receive copies of the documents via e-mail from the Court to confirm filing.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 4, 2011

Sean R. Barry